[Civ. No. 22057. First Dist., Div. Two. Mar. 19, 1965.]

DON daROZA, INC., Plaintiff and Appellant, v. NORTHERN CALIFORNIA DISTRICT COUNCIL OF HOD CARRIERS, BUILDING AND CONSTRUCTION LABORERS OF THE INTERNATIONAL HOD CARRIERS, BUILDING AND COMMON LABORERS' UNION OF AMERICA et al., Defendants and Respondents.

Jack Miller and Duncan Davidson for Plaintiff and Appellant.

Charles P. Scully and Donald C. Carroll for Defendants and Respondents.

SHOEMAKER, P. J.—Don daRoza, Inc. brought this action to obtain compensatory and punitive damages for breach of a no-strike clause contained in a collective bargaining agreement. The defendants named in the complaint were the Northern California District Council of Hod Carriers, Building and Construction Laborers of the International Hod Carriers, Building and Common Laborers' Union of America (hereafter referred to as "district union"), certain of its individual officers and agents, and Local 185 of the Northern California District Council of Laborers (hereafter referred to as "local union").

The first cause of action of the complaint alleged that plaintiff was a member of the Northern and Central California Chapter, The Associated General Contractors of America, Inc. (hereafter referred to as "contractors' association"); that on June 30, 1959, defendant district union, which was acting as the authorized agent of defendant local union, entered into a collective bargaining agreement with the contractors' association, which was acting as plaintiff's authorized agent; that said agreement contained a no-strike provision to the effect that while the agreement was in force, neither the district nor local union would authorize "any strike, slowdown, or stoppage of work in any dispute, complaint, or grievance, arising under the terms and conditions of this Agreement"; that said agreement provided for arbitration of any disputes by a Board of Adjustment composed of representatives of the parties and further provided that the arbitrators' decision should be final and binding on the parties, and that "pending such decision work shall be continued in accordance with the provisions of this Contract"; that on July 21, 1960, plaintiff, in reliance on the collective bargaining agreement, entered into a contract with the State of California to construct a group of buildings for the forestry division; that on August 16, 1960, a dispute arose between plaintiff and defendants district union and local union with respect to a provision of the collective bargaining agreement which related to subsistence pay, and which was

subject to the arbitration and no-strike provisions of said agreement; that on August 16, 1960, defendants district union and local union threatened to strike and on August 30, 1960, did strike and picket plaintiff's construction operations; that as a direct result of defendants' violation of the no-strike provision of the collective bargaining agreement, plaintiff's other employees refused to cross the picket line, plaintiff was prevented from performing its contract with the state, and suffered damages in the amount of $46,956.09.

As a second cause of action, plaintiff alleged that the individually named defendants had negotiated the collective bargaining agreement on behalf of defendants district union and local union; that these individual defendants had represented to plaintiff that the no-strike provision of said agreement would be fully complied with, when in fact all the defendants had agreed among themselves that they would not comply with said provision; that plaintiff and its agent, the contractors' association, relied upon these representations and entered into the collective bargaining agreement and the construction contract with the state; that as a direct result of defendants' fraudulent and malicious actions, plaintiff had suffered damages in the amount of $46,956.09, and was also entitled to recover punitive damages in the amount of $200,000.

Defendants demurred to the complaint on the grounds that it failed to state a cause of action; that plaintiff was without legal capacity to sue; that there was a nonjoinder of indispensable parties; and that the complaint was ambiguous and unintelligible in certain specified respects.

Defendants also moved for summary judgment on the grounds that the complaint failed to state a cause of action and that plaintiff had failed to exhaust the administrative remedies of the arbitration procedure prior to commencing the action. In support of said motion, defendants filed the affidavit of their attorney setting forth the arbitration provisions of the collective bargaining agreement, and averring that plaintiff had never attempted to utilize the grievance procedure contained in said agreement or to submit the alleged dispute to arbitration. The affidavit further averred that on September 16, 1960, arbitration proceedings were held at defendants' request with regard to various projects which were the subject of a controversy between defendant district union and the contractors' association; that plaintiff was represented at said proceedings, but failed to allege any loss

or raise any of the issues or allegations contained in the complaint.

Plaintiff's president filed a declaration in opposition to the motion for summary judgment and therein set forth the arbitration and no-strike provisions of the collective bargaining agreement, and attached as an exhibit a letter from the district union to the contractors' association, demanding subsistence pay and advising that the union would take the steps necessary to enforce this provision of the agreement if the demand was not met. The declaration also stated that the union had never requested arbitration of the dispute over subsistence pay prior to commencing the strike referred to in the complaint; that subsequent to the commencement of said strike, the parties to the collective bargaining agreement undertook arbitration of other questions, but the dispute over subsistence pay was specifically excluded from consideration.

The demurrer and motion for summary judgment were heard by the court, which continued the matter for approximately a month for the purpose of giving the plaintiff the opportunity to submit its dispute embraced by the complaint to arbitration, if it so desired.

At the continued hearing, it was stipulated that plaintiff had made no attempt to bring the matter to arbitration. It was further stipulated that a transcript of certain arbitration proceedings held on September 16, 1960 might be admitted into the record. An examination of the transcript reveals that arbitration proceedings were held before a Board of Adjustment, as provided for in the bargaining agreement. It consisted of two members selected by defendant district union, two members selected by the contractors' association, and a fifth independent member; that at said proceedings, after preliminary statements as to their respective positions by counsel for the contractors' association and the district union, the Board of Adjustment went into executive session, at the conclusion of which the following transpired: "The Fifth Member: . . . I want to make it clear for the record that in what I am going to refer to as the Da Roza Job No. 2, the Board of Adjustment does not, until the stipulation is agreed to, have jurisdiction over the grievance on that job. Nevertheless, for reasons discussed before the Board and by counsel, the Board desires to make the following suggestions to the parties and to ask them whether they will agree. These suggestions are as follows: 1. That the job be resumed as soon

as possible and practicable. 2. That the grievance be referred to this Board of Adjustment, to be heard by the Board of Adjustment, which will of course render a decision on the issue involved in that case. 3. That in view of the fact that timely notice was filed, if an Award is made in favor of the Union's position, it be retroactive to the first day that a laborer was hired on the job. 4. That the Da Roza Job No. 2 be heard first; that the other cases thereafter be heard by the Board of Adjustment; that the question of retroactivity as to those jobs, will be placed in issue by the parties. 5. That further as to the Da Roza Job No. 2, the Chapter and the Employer will withdraw their grievance against the Union alleging a violation of the no-strike clause of the Agreement. Now I shall ask the question of the Union representatives: Are those recommendations accepted? MR. VAN BOURG: So stipulated, Mr. Chairman. THE FIFTH MEMBER: On behalf of the Employer? MR. STANTON: So stipulated, Mr. Chairman.'' The parties then proceeded to arbitrate the subsistence pay disputes which had arisen in connection with plaintiff's forestry camp project and the projects of certain other employers.

On the basis of this transcript and the affidavit and declaration previously filed by the parties, the court ruled that the subject of the action was a matter for arbitration proceedings under the parties' collective bargaining agreement; that plaintiff had withdrawn any claim against defendants as a result of said dispute during the arbitration proceedings of September 16, 1960; and that the motion for summary judgment must be granted, the demurrer sustained without leave to amend, and judgment was thereafter entered dismissing the complaint. Plaintiff appeals therefrom.

Appellant contends that the granting of defendants' motion for summary judgment was erroneous. We do not agree. The parties stipulated that the court might consider the transcript of the arbitration proceedings held on September 16, 1960. That transcript reveals that the work stoppage dispute was withdrawn by appellant's representative, and that the subsistence pay dispute as to daRoza Job No. 2 was stipulated to be and was submitted to said board for determination, along with the matters for which the board was originally chosen.

We are satisfied that the work stoppage dispute was subject to the arbitration provision of the collective bargaining agree-

ment, and that appellant's failure to comply with said provision constituted a complete defense to the action.

In *Drake Bakeries, Inc.* v. *Local 50, American Bakery & C. W. I.* (1961) 370 U.S. 254 [82 S.Ct. 1346, 8 L.Ed.2d 474], the court held that an arbitration provision containing broad and comprehensive language did require arbitration of the union's violation of a no-strike clause. The court pointed out that the collective bargaining agreement authorized the parties to refer to arbitration " 'all complaints, disputes or grievances arising between them involving questions of interpretation or application of any clause or matter covered by this contract or any act or conduct or relation between the parties hereto, directly or indirectly.' " (P. 257.) Although the employer contended that the parties could not have intended to arbitrate so fundamental a matter as a violation of the no-strike provision, the court stated that it would be more reasonable to expect that if the matter were actually so basic and fundamental to the employer, the parties, had they so intended, would have expressly excluded it from the comprehensive language of the arbitration clause (pp. 258-259). The employer also asserted that even if it had agreed to arbitrate union violations of the no-strike clause, the union's breach of said clause had excused it from proceeding with arbitration (p. 260). The court stated: "However, this Court has prescribed no such inflexible rule rigidly linking no-strike and arbitration clauses of every collective bargaining contract in every situation. The company has not attempted, or claimed the right, either to terminate the entire contract or to extinguish permanently its obligations under the arbitration provisions. Instead, it has sued for damages for an alleged strike and, as far as this record reveals, the contract continued in effect, as did the promises of the parties to arbitrate and the promise of the union not to strike. Moreover, in this case, under this contract, by agreeing to arbitrate all claims without excluding the case where the union struck over an arbitrable matter, the parties have negatived any intention to condition the duty to arbitrate upon the absence of strikes. They have thus cut the ground from under the argument that an alleged strike, automatically and regardless of the circumstances, is such a breach or repudiation of the arbitration clause by the union that the company is excused from arbitrating, upon theories of waiver, estoppel, or otherwise." (Pp. 261-262.)

Appellant concedes that the rule of the *Drake Bakeries* case is applicable where the language of an arbitration provision is broad and comprehensive but asserts that the arbitration provision in the instant case is not of such an all-inclusive nature. This argument is untenable.

The arbitration provision set forth in the parties' affidavit and declaration provides that "In the event a dispute, except a dispute arising out of the jurisdictional disputes clause, . . . arises, a Board of Adjustment shall be created for the settlement of such dispute. It shall be composed of two representatives selected by Union and two representatives selected by Employer . . . Said Board shall have the power to adjust *any differences that may arise* regarding the meaning or enforcement of this contract. Within twenty-four (24) hours of the time any dispute is referred to it by *either party,* said Board shall meet to consider such dispute. If the Board, within twenty-four (24) hours after such meeting cannot agree on any matter referred to it, the members thereof within three (3) days shall choose a fifth member, who shall have no business or financial connection with either party. The decision of said Board shall be determined by a majority of its members and shall be rendered within ten (10) days after such submission. Said decision shall be final and binding on both parties hereto. . . . No proceedings hereunder based upon *any dispute, complaint, or grievance* herein provided for shall be recognized unless called to the attention of the Employer and the Union or Local Union within ten (10) days after the alleged violation was committed." (Italics added.)

Since the language above quoted refers to any dispute, complaint or grievance, and authorizes either party to submit to arbitration any difference that might arise concerning the meaning or enforcement of the contract, it cannot be seriously doubted that said provision was sufficiently broad to encompass the dispute based upon respondents' alleged violation of the no-strike clause. Moreover, a reading of the transcript of the proceedings held on September 16, 1960, clearly indicates that the parties themselves considered the work stoppage dispute to be an arbitrable one. Their practical construction of the agreement was entitled to considerable weight. (*Crestview Cemetery Assn.* v. *Dieden* (1960) 54 Cal. 2d 744, 752-754 [8 Cal.Rptr. 427, 356 P.2d 171].)

Although appellant relies upon a number of decisions holding that an employer need not arbitrate the union's violation of a no-strike clause prior to commencing an action to recover

damages therefor, all of the authorities cited are either readily distinguishable or are based upon nonpersuasive reasoning. *Atkinson* v. *Sinclair Refining Co.* (1961) 370 U.S. 238 [82 S.Ct. 1318, 8 L.Ed.2d 462], is of no benefit to appellant, since the collective bargaining agreement in that case did not allow for arbitration at the behest of the employer, and provided only for the arbitration of employee grievances at the option of the union. Under such circumstances, there is no basis for holding that arbitration of the union's violation of the no-strike clause was a condition precedent to the commencement of the employer's action to recover damages. The remainder of the authorities relied upon by appellant are cases which were decided by the federal circuit court of appeals prior to the *Drake Bakeries* case, and which fall into two main categories. Typical of the first category are *International Union U.F.W.A.* v. *Colonial Hardwood Flooring Co.* (4th Cir. 1948) 168 F.2d 33, and *Cuneo Press, Inc.* v. *Kokomo Paper Handlers' Union No. 34* (7th Cir. 1956) 235 F.2d 108, both of which were distinguished in the *Drake Bakeries* case on the ground that they involved far more narrowly drawn arbitration clauses. (*Drake Bakeries, Inc.* v. *Local 50, American Bakery & C.W.I., supra,* at p. 264.) Typical of the second category are *United Electrical, Radio & Machine Workers* v. *Miller Metal Products, Inc.* (4th Cir. 1954) 215 F.2d 221, and *Markel Electric Products, Inc.* v. *United Electrical, Radio & Machine Workers* (2d Cir. 1953) 202 F.2d 435, both of which did involve broadly drawn arbitration clauses but were impliedly disapproved in the *Drake Bakeries* case. (*Drake Bakeries, Inc.* v. *Local 50, American Bakery & C.W.I., supra,* at p. 264, fn. 13.)

Further, appellant's failure to refer the alleged violation of the no-strike clause for arbitration, irrespective of the stipulation of September 16, 1960, above noted, constituted a sufficient ground for the granting of respondents' motion for summary judgment. A similar failure was before the reviewing court in the case of *Cone* v. *Union Oil Co.* (1954) 129 Cal. App.2d 558 [277 P.2d 464], where it was held that the granting of summary judgment was proper when it appeared that the plaintiff was a party to a collective bargaining agreement and had failed to exhaust the grievance and arbitration procedures therein provided for prior to commencing an action for breach of said agreement. The court stated, "It is the general rule that a party to a collective bargaining contract which provides grievance and arbitration machinery for the

settlement of disputes within the scope of such contract must exhaust these internal remedies before resorting to the courts in the absence of facts which would excuse him from pursuing such remedies. [Citations.] This rule, which is analogous to the rule requiring the exhaustion of administrative remedies as a condition precedent to resorting to the courts (2 Cal.Jur.2d 304, § 184), is based on a practical approach to the myriad problems, complaints and grievances that arise under a collective bargaining agreement." (Pp. 563-564.)

Our conclusion that the granting of the motion for summary judgment and the judgment of dismissal entered thereon was proper makes it unnecessary to pass upon appellant's contention that the sustaining of the demurrer without leave to amend was erroneous.

Judgment affirmed.

Agee, J., and Taylor, J., concurred.